UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60835-LEIBOWITZ

**AWILDA CAROZZA**,

   *Plaintiff*,

v.

**FLORIDA DEPARTMENT OF COMMERCE**,

   *Defendant.*
_____/

## ORDER

THIS CAUSE comes before the Court on Defendant Florida Department of Commerce's ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF No. 19], filed on October 18, 2024. This Court previously granted Defendant's Motion to Dismiss Plaintiff Awilda Carozza's First Amended Complaint for failure to state claims of Title VII disparate treatment, hostile work environment, and retaliation. [ECF No. 15]. Plaintiff now brings this Second Amended Complaint with just one count of Title VII retaliation. [Second Amended Complaint, ECF No. 18]. For the foregoing reasons, the Motion is DENIED.

## BACKGROUND

Plaintiff, a resident of Broward County, Florida, was employed by Defendant in the Florida Department of Economic Opportunity since May 2019. [Second Amended Complaint ¶¶ 4, 11]. On April 28, 2022, Reza Kavoosi ("Kavoosi"), Plaintiff's co-worker, allegedly called Plaintiff a "fucking bitch," after which Plaintiff was distraught to the point of tears. [*Id.* ¶¶ 12–13]. Plaintiff immediately reported this incident to Exit J. Smith ("Smith"), the State Veterans Program Coordinator, to seek his guidance because "she did not feel safe returning to work." [*Id.* ¶ 14].

Smith then initiated a virtual conference call between Plaintiff, Kavoosi, and Eric Ocasio ("Ocasio"), whom this Court assumes is another employee. [*Id.* ¶ 16]. Smith allegedly allowed the confrontation to escalate which led to Kavoosi cursing at Plaintiff and threatening to come to Plaintiff's office. [*Id.* ¶ 17–19]. Plaintiff locked herself in her office until Kavoosi left, after which Ocasio retrieved her car and escorted her out, so Plaintiff could leave. [*Id.* ¶¶ 20–22].

Plaintiff reported this incident to Derrick Elias ("Elias") at Human Resources the next day. [*Id.* ¶ 23]. Elias responded that Human Resources would not conduct a formal investigation and would rely only on the information that Smith provided. [*Id.* ¶ 24]. Smith then pressured Ocasio to change his statement to align with Kavoosi's version of events. [*Id.* ¶ 25]. On May 24, 2022, Plaintiff contacted Elias regarding Smith's refusal to communicate with her and stated that she felt this was a form of retaliation. [*Id.* ¶ 27]. During this conversation, Plaintiff informed Elias that Kavoosi referred to Plaintiff as a "pussy" in a text message, which Smith was aware of, but did not report to Human Resources. [*Id.* ¶¶ 28–29]. Kavoosi was later terminated "[d]ue to Plaintiff's persistence[.]" [*Id.* ¶ 30]. Elias dismissed Plaintiff's complaint of retaliation and suggested that she initiate contact with Smith herself. [*Id.*]. In August 2022, Plaintiff emailed Julisa Nnorom ("Nnorom"), an "EEO representative" about the hostile work environment, feelings of ostracization, and the alleged retaliation by Smith. [*Id.* ¶ 31]. Nnorom responded that Plaintiff should file a formal complaint with the Florida Commission on Human Relations, which she did. [*Id.* ¶ 32]. Then, Plaintiff observed multiple male colleagues receive a promotion due to their proximity to Smith while "Plaintiff was being excluded from any opportunities despite her qualifications." [*Id.* ¶ 33].

On October 3, 2022, Plaintiff received a message regarding her locality pay from Smith, which caused her to email Human Resources. [*Id.* ¶ 34]. With no response, Plaintiff again emailed

Human Resources on November 21, 2022. [*Id.* ¶ 35]. Plaintiff was then contacted by someone named Mark Brennan who told Plaintiff that Smith instructed her not to communicate with Human Resources directly. [*Id.* ¶ 36]. On November 30, 2022, Smith "gleefully shared a conversation he had with HR's Karol Moore about terminating Plaintiff rather than paying Plaintiff her locality pay." [*Id.* ¶ 37]. Smith then "withdrew all helpful managerial oversight and instructions and ignored Plaintiff's email requests for assistance . . . looked over Plaintiff's shoulder and criticized everything she did[.]" [*Id.* ¶¶ 39–40]. On February 23, 2023, Plaintiff emailed Nnorom seeking guidance on the complaint with the Florida Commission of Human Relations, but there was no indication that progress was being made, and she then decided on March 10, 2023, to rescind her complaint in fear of further alleged retaliation. [*Id.* ¶¶ 41–42]. Plaintiff was terminated without warning on March 29, 2023. [*Id.* ¶ 43].

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotations omitted)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

3

his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted). "[D]etermining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (alterations accepted) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there is some causal relation between the two events." *McMillian v. Postmaster Gen., U.S. Postal Serv.*, 634 F. App'x 274, 277 (11th Cir. 2015). Plaintiff sufficiently alleges that she engaged in statutorily protected expression via her complaints to Human Resources and to the Florida Commission on Human Relations, and she sufficiently alleges an adverse employment action via her termination. Thus, whether Plaintiff's Second Amended Complaint survives depends on whether she adequately pleaded some causal relation between the two events. To prove a causal connection, a plaintiff must demonstrate "that that the protected activity and the adverse action were not *wholly unrelated*." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (emphasis in original) (citing *Clover v. Total System Services*, 176 F.3d 1346, 1354 (11th Cir.1999)).

Defendant first argues that Plaintiff's Complaint must be dismissed because she did not adequately plead that her complaints were the "but-for" cause of her termination. [Mot., ECF No. 19 at 4]. However, Defendant cites no case from the Supreme Court or the Eleventh Circuit that requires Plaintiff to *plead* that the complaint was the "but-for" cause of the adverse employment action. [*See* Mot. at 4–5 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)

(holding that "Title VII retaliation claims must be *proved* according to traditional principles of but-for causation[.]") (emphasis added); *Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 778 (11th Cir. 2014) (noting on an appeal from an order granting summary judgment that the plaintiff has the burden to proffer evidence that discriminatory animus was the "but-for" cause of the adverse employment action)).]. Therefore, the Defendant's argument that Plaintiff's Second Amended Complaint must be dismissed because she failed to plead that her complaints were the "but-for" cause of her termination is rejected by this Court.

Defendant also argues that the Second Amended Complaint is "plainly insufficient" as to causal relation and fails to plead sufficient temporal proximity between Plaintiff's complaints and her termination. [Mot. at 5–7]. The Eleventh Circuit has held that the causal connection element is satisfied if the decision-maker was aware of the protected conduct and there was *close temporal proximity* between this awareness and the adverse employment action. *Farley*, 197 F.3d at 1337. (emphasis added) (finding close temporal proximity where an employer terminated an employee seven weeks after the employer learned of the employee's complaint). "But mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* (citations omitted) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."). The calculation of temporal proximity begins "on the date the employer gains knowledge of the protected expression." *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008) (internal quotation marks omitted) (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). "In the absence

of close temporal proximity, a plaintiff can demonstrate a causal connection by showing that his employer knew of the protected activity and that a series of adverse employment actions commenced shortly thereafter." *Steenback v. Fed. Express Corp.*, No. 12-cv-61515, 2013 WL 12085475, at *6 (S.D. Fla. Aug. 21, 2013) (citing *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 996 (11th Cir. 2010)). "However, any intervening retaliatory acts must have been material." *Entrekin*. 376 F. App'x at 996. An action is material when it may "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (upholding a jury's findings that a reassignment of responsibilities and a 37-day suspension were materially adverse actions by an employer).

Too much time passed between Plaintiff's initial complaint in April 2022, or even her complaint to the Florida Commission on Human Relations in August 2022, and her termination in March 2023 for this Court to find that there was sufficient temporal proximity between the two events to satisfy the causal connection prong. *See Thomas*, 506 F.3d at 1364. Therefore, Plaintiff's retaliation claim can only survive if she pleaded that her employer knew of her complaints *and* a series of material adverse employment actions commenced shortly thereafter, and before her eventual termination. *See Steenback*, 2013 WL 12085475, at *6.

Plaintiff pleads that after her initial complaint regarding the incident with Kavoosi and Smith, Smith "refus[ed] to communicate with her[,]" discussed terminating Plaintiff with Human Resources rather than paying Plaintiff locality pay, withdrew all helpful managerial oversight and ignored Plaintiff's email requests for assistance, "looked over Plaintiff's shoulder and criticized everything she did," and that other employees received promotions "due to Mr. Smith's connections, while Plaintiff was being excluded from any opportunities despite her qualifications." [Second Amended Complaint ¶¶ 27, 33, 37, 39, 40]. Based on these allegations, it is *plausible* that

Plaintiff was retaliated against by her employer. The determination of whether intervening retaliatory actions were material is a context-specific inquiry, and it is plausible that an employer may retaliate against an employee who engaged in statutorily protected activity by refusing to communicate with the employee, withdrawing all oversight, unduly criticizing the employee, and overlooking the employee for promotions despite her qualifications. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69 ("[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.").

These allegations are sufficient, when viewed in the light most favorable to the Plaintiff, for the doors of discovery to open so a factfinder can determine whether these actions by Smith, if they occurred, are "material" such that a reasonable worker would be dissuaded from complaining and constituted a series of retaliatory actions sufficient to prove a retaliation claim without temporal proximity. *See Blanc v. City of Miami Beach*, 965 F. Supp. 2d 1350, 1356 (S.D. Fla. 2012) ("The Court is not prepared at this juncture, with no factual record, to conclusively determine that Plaintiff's potentially protected activities were 'wholly unrelated' to the alleged adverse actions. Plaintiff has successfully pleaded a claim for retaliation for purposes of a motion to dismiss. While Defendant certainly may raise the issue of temporal causation on summary judgment, the Court will not undertake a factual determination of causation on the current record.") Accordingly, Plaintiff's retaliation claim may survive at this stage.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Motion [**ECF No. 19**] is **DENIED**. Plaintiff's claim of Title VII retaliation survives.

**DONE AND ORDERED** in the Southern District of Florida on December 20, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record